Harold Tessleb, J.
This article 78 proceeding has been brought to review and thereupon annul the determination of the City Bent and Behabilitation Administrator who by order dated June 6,1962, denied petitioner’s protest from an order denying a decrease in the maximum rent of the subject apartment which was based upon her request to discontinue the service of gas and electricity to the tenant thereof.
On September 18, 1961, petitioner filed an application with the Local Bent Administrator for permission to decrease the service of gas and electricity, alleging that such service was too costly in that the tenant consumed amounts far in excess of normal use. The tenant did not consent to petitioner’s application and alleged that the increased consumption of the utilities was attributable to the building appliances which were connected to the same meter as her apartment. On December 5, 1961, the Local Bent Administrator issued an order denying petitioner’s application.
Upon protest, substantially the same contentions were urged by both petitioner and the tenant. By order dated June 6, 1962, the City Rent and Rehabilitation Administrator denied the peti *1089 tioner’s protest stating that “ The Administrator finds that gas and electric service is an essential service included in the maximum rent. The Administrator notes that the tenant here in occupancy has not consented to the elimination of the service. Accordingly, the Administrator finds that the service of gas and electric may not be eliminated by the landlord.”
In the opinion of the court the aforesaid order denying petitioner’s protest was arbitrary and capricious and is not founded upon a reasonable basis designed to maintain essential services. (Cf. Matter of First Terrace Gardens v. McGoldrick, 1 N Y 2d 1.) It is to be noted that the Administrator’s order denying petitioner’s protest is based in part upon the tenant’s nonconsent to the elimination of the utilities. Nowhere, however, does it appear in the Rent, Eviction and Rehabilitation Regulations of the City Rent and Rehabilitation Administration that the tenant’s consent is necessary. Subdivision a of section 35 of the regulations merely provides that essential services shall be maintained until an order permitting a decrease thereof has been entered by the Administrator.
The respondent relies upon Matter of Meyfan Management v. Weaver (15 Misc 2d 687), which held that the Rent Commission was not arbitrary in denying the landlord’s application to have the tenant billed directly for gas and electricity services. However, in that case the court based its decision upon a finding ‘ ‘ that refusal to permit a switch would not be inequitable since other remedies were provided to cover increases in costs or increase in services due to installation of appliances not within the scope of ordinary household and kitchen appliances ” (p. 689). We do not have that situation here.
In the instant case, while the excess amount of electricity consumed by the tenant may in the past have been partly attributable to the petitioner’s use (which situation has now been eliminated), there is no explanation at all offered for the abnormally large consumption of gas by the tenant. To permit the continuance of such an abuse by the tenant in effect constitutes an unwarranted and unauthorized decrease in the maximum rent to which the petitioner is legally entitled and a refusal to permit a transfer would be improper, unreasonable and wholly inequitable. Such remedies as may be available to the landlord for increases in costs or increases in services would be of little or no practical application and benefit in this situation.
In the court’s opinion, the intent and contemplation of subdivision a of section 35 is to prevent a landlord from indirectly violating the regulations by visiting substantial hardship or irreparable harm upon a tenant under the guise of a legal adjust *1090 ment (downward) of the maximum rent under the guise of a decrease in services. An historical review of the rent control statutes and regulations, commencing with the Federal O. P. A. in 1942, to date, clearly indicates such an intent and purpose. I do not believe it ever was intended, and should not now be permitted to be, a tool in the hands of either landlord or tenant for the purpose of gaining an inequitable advantage. The latter would be the inevitable consequence of the rule arbitrarily adopted by the Administrator in the instant case. Where the tenant can, by the simple expedient of filing an application with the utility company, obtain the same services, such services cannot be said to be of such an “ essential ” nature as to warrant the requirement of consent by the tenant. No deprivation or harm can come to the tenant. The new rent is to be fixed by the Bent Administrator and remains always subject to control and regulation. The services and equipment furnished remain identical in nature, quality and supply to those being presently furnished, the only change being the recipient of payment for said services, which is of no significance whatsoever and is entirely immaterial to the issue involved. In the court’s opinion the furnishing of gas and electricity under these circumstances cannot be held to be such an essential service as requires the consent of the tenant and thus arbitrarily deprives the petitioner of the substantive legal right given him by the regulations.
Accordingly, the petition is granted and the order dated June 6, 1962, is annulled. The matter is remanded to the District Rent and Rehabilitation Director for the purpose of establishing an adjusted (downward) rent for the subject apartment, which adjusted rent will be based upon the tenant furnishing her own gas and electricity.